FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 1 1 2019 ★

BROOKLYN OFFICE

IN THE U.S. DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

IN RE: ANGELO EFTHIMIATOS,
Petitioner, *pro se*

REPLY TO GOVERNMENT'S LETTER IN OPPOSITION TO
EMERGENCY MOTION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. §2241

CV 19-298

The Accused, Angelo Efthimiatos, the Petitioner in this case, respectfully suggests to the Court that the Government misapprehends his arguments presented in his 2241 Petition for release from pretrial detention. First, the Government says that this Court lacks jurisdiction even though it is Black-Letter Law that, when someone is challenging pretrial detention, a motion under §2241 is the perfect if not only vehicle. A 2255 motion is only for challenging a conviction, which the Petitioner is not doing since he has not yet been convicted. Though a jury found Petitioner guilty, a finding of guilt is not a "final judgment" by any means; therefore the Petitioner has been held and deprived of his liberty in violation of the Fourth, Fifth, Sixth, and Eighth Amendments.

With the utmost respect for the Government's Letter in Opposition (Gov. Opp. Doc. 5), it appears that the Government misunderstands the Petitioner's arguments, the law of the Second Circuit, and in some parts the Constitution of the United States. First, the Government argues that the Petitioner has been "convicted." That is not true. After being unlawfully held for eight months, he was found guilty by a jury in Vermont after a two day jury trial in early December by a jury that was seated in October as if that could somehow thwart the Speedy Trial Act. The Government was kind enough to include the Docket from the Petitioner's case, so it will be easier to point out all the violations by reference to the dates and Docket numbers. It is Black-

1



Letter law in the Second Circuit (and the entire country for that matter) that a person is not "convicted" as a matter of law until they are sentenced by the district court judge. This will not happen until April in Vermont, a full year after the Petitioner was unlawfully detained, seized, searched, had his plane searched, and then was falsely arrested for a crime that the DEA Agents (disguised as FAA Agents doing a ramp check) knew that he did not commit because his Airman's Certificate was still valid.

A prisoner in federal custody or awaiting trial for a violation of federal law may seek a writ of habeas corpus. 28 U.S.C. §2241(c)(1)-(3). 28 U.S.C. §2243 also provides that "A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." The law of the Second Circuit is clear. One is not convicted until they are sentenced, and the Petitioner has not yet been sentenced in Vermont. *See, e.g. Johnson v. United States*, 623 F.3d 41 (2d Cir. 2010):

> "The Supreme Court has made clear that "[a] judgment of conviction includes both the adjudication of guilt and the sentence." *Deal v. United States*, 508 U.S. 129, 132 (1993); *Teague v. Lane*, 489 U.S. 288, 314 n.2 (1989) ("As we have often stated, a criminal judgment necessarily includes the sentence imposed upon the defendant."); *Berman v. United States*, 302 U.S. 211, 212 (1937) ("Final judgment in a criminal case means sentence. The sentence is the judgment."). A criminal judgment becomes final for purposes of appellate review, therefore, "after the district court sentences the defendant and disassociates itself from the case." *Camacho*, 370 F.3d at 306 (*quoting Clay v. United States*, 537 U.S. 522, 527 (2003))." *Johnson* at 45.

*See, also, United States v. Peters*, 333 F.Supp.3d 366 (D.Vt. 2018), a recent case from the District of Vermont that cites to both *Berman* and *Johnson*:

> "Final judgment in a criminal case means sentence. The *sentence* is the *judgment*." *Berman v. United States*, 302 U.S. 211, 212 (1937); Black's Law Dictionary (8th ed. 2004) (defining "sentence" as "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty," and noting that "sentence" is "[a]lso termed

2

*judgment of conviction."). See Johnson* at 45 (*citing Berman* and observing that "sentence is also termed judgment of conviction") (internal quotation marks and alterations omitted) (emphasis in original)." *Peters* at 373.

Second, the Government suggests that a 2241 Habeas Petition is the wrong device for the terrible unconstitutional experience the Petitioner has endured. Once again, the law of the Second Circuit is very clear that a Habeas Petition is the appropriate vehicle to challenge detention. *See, e.g., United States v. McGriff*, 468 F.Supp.2d 445 (E.D.N.Y. 2007), quoting several cases, including *United States v. Basciano*, 369 F.Supp.2d 344 (E.D.N.Y. 2005):

> "The courts of this circuit consistently have held that a habeas petition is the appropriate vehicle for prisoners challenging their placement in pretrial administrative detention and seeking release into general population. *See Boudin v. Thomas*, 732 F.2d 1107, 1111 (2d Cir. 1984); *Giano v. Sullivan*, 709 F.Supp. 1209, 1212 (S.D.N.Y. 1989); *United States v. Felipe*, 1996 WL 409181, at *1 n.2 (S.D.N.Y. July 19, 1996). Basciano therefore appropriately addressed his request as a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241." *Basciano* at 348.

Pretrial detention satisfies due process only if its purpose is regulatory rather than punitive. *United States v. Salerno*, 481 U.S. 739, 746–47 (1987); *Bell v. Wolfish*, 441 U.S. 520, 536–537 (1979). Permissible regulatory purposes include "preventing danger to the community," *Salerno* at 747, and "ensur[ing] [a defendant's] presence at trial," *Bell* at 536. In a due process challenge to pretrial detention, "we review the district court's findings of historical fact ... for clear error" and "its ultimate resolution of the constitutional due process issue de novo." *United States v. Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993). The government can also waive its non-exhaustion defense by failing to raise the issue to the court in a timely fashion. *Rosario v. United States,* 164 F.3d 729, 732 (2d Cir. 1998). *Basciano* at 348. The Government did not raise that point, so it is waived.

As this Court knows better than most, virtually the only defendants not to receive bail are terrorists, drug lords, and international arms dealers. It is interesting to note that defendants

accused of smuggling people as well as drugs across the Canadian Border into Vermont were released on bail. The Petitioner would not risk a two year sentence for violating supervised release in Iowa and a ten year sentence for skipping his trial in Vermont, because he would never leave his disabled wife, special needs daughter, or his Vermont farmhouse for a life on the run with no money, family, or friends. Only a cruel and unfeeling bureaucracy like the Department of Justice could imagine such a thing.

In his original Habeas Petition, Angelo does mention two fairly famous cases. The first is the case of the Canadian student, Nishal Sankat, who was caught red-handed on September 20, 2018 trying to steal a 737 from the Orlando-Melbourne Airport, but received a sentence of only 12 days and a $900 fine. Angelo has already served 10 months of pretrial incarceration as well as the pain of being transferred numerous times on the way from Vermont to Iowa and now back to Vermont. He has also been sentenced to 18 months in prison by the district court in Iowa for a supervised release violation that allegedly happened in Vermont.

Now that Angelo has served far longer in captivity than Benatta, he deserves to be freed under §3164 of the Speedy Trial Act and to have his **Indictment** dismissed as Benatta did pursuant to §3161(j), not his conviction as the Government erroneously argues (because he has not been sentenced yet). If a suspected 9/11 terrorist caught at the Canadian Border and held in Brooklyn MDC for only four months was released on Speedy Trial grounds and had his indictment dismissed with prejudice pursuant to §3161(j), then the Petitioner should be given more leniency after being detained for 10 months on what amounts to a misdemeanor according to the FAA for flying to Massachusetts from Vermont. *See United States v. Benatta*, 2003 WL 22202371 (W.D.N.Y. 2003).

4

This brings up the Government's final fallacious argument; that this Court somehow lacks jurisdiction. The Writ of Habeas Corpus tracks its roots back to the Magna Carta, and please see what Justice Ginsburg had to say about the Eighth Amendment in regard to the states and the Excessive Fines Clause. *See Timbs v. Indiana*, 2019 WL 691578 (2019). The Founders meant to stop all "excessive" sanctions, whatever they were called, and they also feared being hauled off from Boston to London to stand trial. Angelo has now been hauled off from Vermont to Iowa for a crime that he did not commit and he has spent more time on the road than *Tinklenberg* and *Benatta* combined. He was denied bail; unreasonably seized and searched; deprived of a Speedy Trial in the Venue where the alleged crime took place, and now the Government asks this Court to ignore the protections given to all American citizens when Angelo is back in Brooklyn MDC sometime next week, on his way back to Vermont so he can be sentenced in April.

Despite the fact that Angelo has a Rule 29 Judgment of Acquittal and a Rule 33 New Trial Motion pending, the Government seems to be certain that Angelo will be duly sentenced for a crime he did not commit unless this Court intervenes within the next month. There is no doubt that the Fourth, Fifth, Sixth, and Eighth Amendments of the Constitution have been violated if not shattered by the Government in this case. The Speedy Trial Act provisions have been violated several times over, as Congress expressed in the Speedy Trial Act a preference that the trial of incarcerated defendants should begin within ninety days after the start of detention. 18 U.S.C. §3164(b). *See United States v. Gonzales Claudio*, 806 F.2d 334 (1986):

> Indeed, in debate on the preventive detention provisions of the Bail Reform Act, the Senate was assured that ninety days is the "worst case limit," 130 Cong.Rec. S941 (statement of Senator Thurmond), and the "upper bound" of pretrial detention, *id.* at S943 (statement of Senator Laxalt). However, as the Second Circuit recognized in *Melendez-Carrion*, there can be no doubt that Congress understood that the periods of trial delay permissible under the Speedy Trial Act would extend the time of preventive detention

5

authorized by the Bail Reform Act, although it may not have appreciated "just how long pretrial detention might last under the exclusions of the Speedy Trial Act." 790 F.2d at 996. Nevertheless, the ninety-day period specified in §3164(b), representing the considered view of the Congress as to the normal limit on pretrial detention, provides at least a point of reference in the Second Circuit's consideration of the constitutional limit on such detention. *Gonzales Claudio* at 340-41.

Furthermore, Angelo never received the Due Process hearing required under *Bell v. Wolfish*, 441 U.S. 520 (1979), which holds that a condition or restriction of pretrial detention violates due process if it is "punitive," because "under the Due Process Clause, a [pretrial] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* at 535. The Government's blatant attempts to circumvent both the Constitution and the clear mandates of Congress can be seen in the fact that the AUSAs of both Vermont and Iowa have violated the very laws that they have sworn to protect, that "interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935).

Angelo has spent more time in a cage than the defendant in *Benatta*, yet unlike Benatta, Angelo was and is an American citizen. Similarly, he has spent twenty times longer incarcerated than Nishal Sankat, the Canadian student from Trinidad. Angelo is asking this Court for the same treatment that an Algerian pilot received after 9/11: a dismissal of his indictment pursuant to §3161(j). He is only asking for his immediate release pursuant to §3164 because all of the Senators who voted for the Speedy Trial Act believed that no one would be detained in prison for more than 90 days while awaiting trial. Yet, no one from Iowa or Vermont sent a notice to the prison as required by §3161(j). Nor, seemingly, has anyone from Iowa or Vermont read the Speedy Trial Act. What Angelo's case proves is that if the Government wants to deprive this Court of jurisdiction, all it has to do is ship Angelo around the country. The Government tried shipping Benatta around the state and his indictment was dismissed with prejudice; the same

justice should apply for Angelo and this Court has the power to grant this Writ, as does any federal judge under the law.

Just to review quickly for the benefit of the Court, and to assure the Government he will be appealing his future conviction to the Second Circuit if he is ever sentenced in Vermont, the following are obvious constitutional violations in this case:

April 10, 2018 – Angelo was unlawfully seized, searched, not properly Mirandized, and arrested without any search warrant or arrest warrant claiming he was flying without an Airman's Certificate (which in fact was still in force, see Exhibit One).

April 10, 2018 – Realizing that they have done an unlawful search and seizure, the DEA Agents arrest him, accusing him of violating statute 49 U.S.C. §46317. See Complaint attached as Exhibit Two.

April 12, 2018 – The judge in Iowa issues an arrest warrant for an alleged probation violation, which if it did happen, occurred in Vermont and not Iowa where Angelo was on supervised release and his probation officer had given him permission to go from Vermont to Georgia. See Executed Arrest Warrant attached as Exhibit Three.

April 26, 2018 – The DEA Agents realized that not only did they illegally detain and falsely arrest an innocent man, they charged him with the wrong statute because he was not carrying any passengers, mail, or contraband. See Indictment attached as Exhibit Four. The erroneous Complaint was then dismissed, and Angelo was charged with the exact opposite, violating every concept of justice listed from *McBoyle* to *Morissette* to *Marinello* that for there to be a crime, you must knowingly cross a bright line, know that you are committing a crime, and know what your punishment will be for breaking the law. As Chief Justice Roberts stated in *Marinello*, no one expects to be indicted for tax evasion simply for paying the babysitter in cash:

"Willfulness...requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991). A taxpayer may know with a fair degree of certainty that her babysitter will not declare a cash payment as income—and, if so, a jury could readily find that the taxpayer acted to obtain an unlawful benefit for another. For the same reason, we find unconvincing the dissent's argument that the distinction between "willfully" and "corruptly"—at least as defined by the Government—reflects any meaningful difference in culpability.

Regardless, to rely upon prosecutorial discretion to narrow the otherwise wide-ranging scope of a criminal statute's highly abstract general statutory language places great power in the hands of the prosecutor. Doing so risks allowing "policemen, prosecutors, and juries to pursue their personal predilections," *Smith v. Goguen*, 415 U.S. 566, 575 (1974), which could result in the non-uniform execution of that power across time and geographic location. And insofar as the public fears arbitrary prosecution, it risks undermining necessary confidence in the criminal justice system. That is one reason why we have said that we "cannot construe a criminal statute on the assumption that the Government will 'use it responsibly.'" *McDonnell v. United States*, 136 S.Ct. 2355 (2016) (quoting *United States v. Stevens*, 559 U.S. 460, 480 (2010)). And it is why "[w]e have traditionally exercised restraint in assessing the reach of a federal criminal statute." *Marinello v. United States*, 138 S.Ct. 1101, 1108-09 (2018).

Without belaboring the point, Angelo was arrested, indicted, and had his initial appearance all within a matter of days. His trial should have been held sometime in July, and if not by then, he should have been released pursuant to §3164 in July. As hard as the Government might look, there is no *Zedner* balancing test as required by *United States v. Zedner*, 547 U.S. 489, 507 (2006) and §3161(h)(7). The words "interests of justice" are mentioned nowhere, and it appears that no one working in the Government's office ever read *Bloate v. United States*, 559 U.S. 196 (2010) or *United States v. Tinklenberg*, 131 S.Ct. 2007 (2011), much less the Second Circuit's decision in *United States v. Bert*, 814 F.3d 70 (2d Cir. (2d Cir. 2016) where the defendant's indictment was dismissed with prejudice for a delay of only 11 months.

But, even more problematic for the Government's case is *United States v. Vispi*, 545 F.2d 328 (2d Cir. 1976) where the defendant was accused of tax evasion, did not spend a single night in jail prior to his bench trial, and the judge in that case took six months to write a short opinion

8

finding him guilty and fining him a mere $1,000. Vispi appealed his "real conviction" as opposed to Angelo's non-conviction, and he had his conviction and indictment vacated on Speedy Trial grounds under the newly-passed Speedy Trial Act. It is difficult to imagine that Angelo's one year detention before he is sentenced will pass muster with the Second Circuit when Angelo finally does appeal his future conviction and/or sentence, which will only occur if the judge ignores the same Constitution and laws of the United States that the Government has ignored to date in this case.

## CONCLUSION

Based on the multiple serious violations of both the Constitution and the laws of the United States, Petitioner respectfully implores this Court to grant his Writ of Habeas Corpus and order his immediate release from custody.


Respectfully submitted

/s/ Angelo Efthimiatos
Angelo Efthimiatos
Reg. No. 13900-030
Incarcerated Inmate
Petitioner, *pro se*
by Nancy Dellamonte
3710 Route 30
Sudbury, VT 05733
914-274-1678

# EXHIBIT ONE



**Federal Aviation Administration**

U.S Department of Transportation
Federal Aviation Administration
Airman Details Report

### Personal Information:
ANGELO PETER EFTHIMIATOS

98 PEACH HILL RD
NORTH SALEM NY 10560-1324
County: WESTCHESTER
Country: USA

### Medical Information:
Medical Class: First  Medical Date: 5/2011
BasicMed Course Date: None  BasicMed CMEC Date: None

### Certificate Information:
Certificate: AIRLINE TRANSPORT PILOT

For further information, you may contact the Airmen Certification Branch at toll free (866) 878-2498.

# EXHIBIT TWO

AO 91 (Rev. 11/11) Criminal Complaint

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 APR 10 AM 10: 23

CLERK

BY_____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
District of Vermont

| | |
|---|---|
| United States of America<br>v.<br>Angelo Peter Efthimiatos<br><br>_____<br>Defendant(s) | )<br>)<br>) Case No.<br>) 2:18-mj-38<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 9-10, 2018__ in the county of __Rutland__ in the _____ District of __Vermont__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 49 USC 46317 | knowingly and willfully serving in any capacity as an airman operating an aircraft in air transportation without an airman's certificate authorizing him to serve in that capacity, to wit, serving as the pilot of a Piper Aircraft, tail number N4563F, without a certificating authorizing him to serve as the pilot of such plane. |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

DEA Special Agent Brandon Hope
Printed name and title

Sworn to before me and signed in my presence.

Date: __04/10/2018__

_____
Judge's signature

City and state: __Burlington, Vermont__       Hon. John M. Conroy, U.S. Magistrate Judge
Printed name and title

# EXHIBIT THREE

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the
Southern District of Iowa

RECEIVED
USMS S/IOWA
2018 APR 12 P 1:40

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 3:13-cr-00015 |
| | ) | |
| ANGELO PETER EFTHIMIATOS | ) | |
| *Defendant* | ) | |

## ARREST WARRANT

To: Any authorized law enforcement officer

YOU ARE COMMANDED to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)* Angelo Peter Efthimiatos,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment ☐ Superseding Indictment ☐ Information ☐ Superseding Information ☐ Complaint
☐ Probation Violation Petition ☑ Supervised Release Violation Petition ☐ Violation Notice ☐ Order of the Court

This offense is briefly described as follows:
Supervised Release Violation (see petition).

Date: 04/12/2018

City and state: Davenport, Iowa

Issued by U.S. District Judge Stephanie M. Rose
*Issuing officer's signature*

WARRANT ISSUED
JOHN S. COURTER, Clerk
By: _____
*Deputy Clerk*

### Return

This warrant was received on *(date)* 4/12/18, and the person was arrested on *(date)* 4/12/18
at *(city and state)* Rutland, VT.

Date: 4/12/18

_____
*Arresting officer's signature*

SDUSM Sean M. O'Neal
*Printed name and title*

# EXHIBIT FOUR

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 APR 26 PM 2: 52

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | NO. 2:18-cr-49-1 |
| v. ) | |
| ) | (49 U.S.C. § 46306) |
| ANGELO EFTHIMIATOS ) | |

## INDICTMENT

The Grand Jury charges:

### COUNT 1

1. At all times relevant to the indictment:

    a. The Federal Aviation Administration ("FAA"), an agency of the United States Department of Transportation, was responsible for the safety of all persons occupying and operating domestic aircraft. This agency was further responsible for certifying and regulating the pilots of civil aircraft. The FAA discharged this responsibility by issuing regulations that, among other things, determine the qualifications of domestic pilots. Specifically in order to lawfully pilot a civil aircraft, an individual must obtain an FAA Pilot Certificate.

    b. On or about July 1, 2014, the FAA revoked ANGELO EFTHIMIATOS's pilot certificate, number 3212215. The revocation order advised ANGELO EFTHIMIATOS that no future application for an airman's certificate would be accepted by the FAA and that his certificate was revoked for life.

    c. Between in or about January 2018 and in or about March 2018, on at least four separate occasions, ANGELO ETHIMIATOS purchased fuel for aircraft in preparation for flight or after landing at the Rutland-Southern Vermont Regional Airport (RUT) in North

Clarendon, Vermont. The fuel purchases included purchases for a Piper aircraft with tail number N4563F.

    d. In the Spring of 2018, N4563F made multiple trips of short duration, often traveling late at night between small airports like Newport State Airport in Rhode Island (UUU), Nantucket Airport in Nantucket, MA (ACK) and Rutland-Southern Vermont Regional Airport (RUT) after those airports had closed. ANGELO EFTHIMIATOS acted as a pilot for at least some of these trips.

    2. Between on or about April 9, 2018 and on or about April 10, 2018, in the District of Vermont and elsewhere, the defendant ANGELO EFTHIMIATOS knowingly and willfully served in any capacity as an airman without an airman's certificate authorizing him to serve in that capacity, in that he piloted N4563F from Nantucket, MA (ACK) to North Clarendon, Vermont (RUT).

(49 U.S.C. §46306(b)(7))

A TRUE BILL

███████████
FOREPERSON

*Christina Nolan by EAPC*
CHRISTINA E. NOLAN (EAPO)
United States Attorney
Burlington, Vermont
April 26, 2018